UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KAREN MARIE ROSE, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1-15-cv-252-JHR |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant | ) |

### MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge wrongly failed to find that the plaintiff's learning disorder and deficits in intellectual functioning were severe impairments, whether the residual functional capacity ("RFC") that he assigned to the plaintiff was supported by substantial evidence, and whether he wrongly interpreted the remand order from the Appeals Council. I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2010, Finding 1,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 16, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to my presiding over this action, including the entry of judgment. ECF No. 22.

Record at 1039; that she suffered from vertigo, tinnitus, asthma, an anxiety-related disorder/generalized anxiety disorder, and an affective disorder/mild to moderate depression, impairments that were severe but which, considered separately or in combination, did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 1039-41; that she had the RFC to perform light work with limitations to reaching overhead, balancing, kneeling, stooping, crouching, and crawling occasionally, no climbing of ladders, ropes, or scaffolds, avoiding pulmonary irritants, unprotected height, and irregular terrain, simple instructions, simple tasks, occasional interaction with coworkers and supervisors, infrequent interaction with the general public, and adapting to occasional routine changes in the workplace, Finding 5, *id*. at 1043; that she was not capable of performing her past relevant work, Finding 6, id. at 1048; and that, given her age (50 years old on the amended alleged onset date), at least high school education, work experience, and RFC, and using the Medical-Vocational Rules of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that the plaintiff could perform prior to October 4, 2012, Findings 7-10, id. at 1049; and that, therefore, she had not been disabled, as that term is defined in the Social Security Act, from September 16, 2009, the amended alleged date of onset of disability, through October 3, 2012, the day before the date upon which she was found to be disabled in connection with a subsequent application for SSI benefits, Finding 11, *id*. at 1050. The Appeals Council declined to review the decision, *id*. at 1019-21, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Step 2 Issues

The plaintiff contends that the administrative law judge should have found her learning disability and deficits in intellectual functioning to be severe impairments. Statement of Specific Errors ("Itemized Statement") (ECF No. 16) at 4. Specifically, she asserts that the administrative law judge failed to explain the weight he assigned to the opinion of Debora Elliott Ward, Ph.D., which she contends required the administrative law judge to find that she suffered from "a severe impairment attributable to [her] working memory deficits." *Id*. at 7. She faults the administrative law judge's decision to credit the testimony at the hearing of Dr. Charles O. Tingley, Jr., a psychological expert. *Id*. at 9-11. She does not explain how her extensive discussion of working memory deficits demonstrates the existence of a severe impairment of a learning disability and/or intellectual functioning that is somehow deficient in a manner that had a more than minimal effect on her ability to work.

The administrative law judge's opinion provided the following discussion relevant to the plaintiff's argument:

> The claimant has been reported to have a learning disability (Exhibits 7F, 9F, 22F, 27F, 29F, 30F, 31F, 34F, 39F, and 43F). Although she has indicated on a few occasions that she received special education services while in school (Exhibits 30F[] and 49F), no school records whatsoever have been submitted into evidence. On January 17, 2013, James Werrbach, Ph.D., diagnosed the claimant with borderline intellectual functioning based on intelligence testing at that time which yielded a full scale I.Q. score of 70 with a verbal comprehension index score of 78, perceptual reasoning index score of 77, processing speed index score of 65, and working memory index score of 74 (Exhibit 49F). However, these scores appear to represent a recent decline in the claimant's intellectual functioning, as the test was administered only a few weeks after the claimant had completed electroconvulsive [treatment] (Exhibits 43F, 44F, and 45F), and testing prior to October, 2012, had yielded somewhat higher scores (Exhibit 30F). When tested in August, 2011, the claimant had a low average full scale I.Q. score of 80 with a verbal comprehension index score of 89, perceptual reasoning index score of 81, processing speed index score of 94, and working memory index score of 71 (Exhibit 30F). Based on those scores, Debra Elliott Ward, Ph.D., diagnosed . . . the claimant

>with a likely learning disorder in the area of arithmetic (Exhibit 30F). The August, 2011, scores appear to [be] more consistent with the claimant's intellectual functioning prior to October, 2012, as the evidence shows that the claimant was able to graduate from high school in 1977, managed a household for many years, and obtain[ed] a driver's license. It should also be noted that the claimant has a long history of semi-skilled past relevant work as a support specialist, childcare worker, file clerk, and receptionist.

Record at 1040-41.

In this regard, the administrative law judge also referred to Dr. Tingley's testimony as follows:

>With respect to the reports of attention deficit hyperactivity disorder and a learning disability, Dr. Tingley stated that these impairments were ambiguous, that if they were present, they were controlled by medication, and that they did not appear to be severe (Testimony). The undersigned has given Dr. Tingley's testimony great weight as he was able to evaluate all of the records for the relevant periods involved, and because it is supported by the evidence as a whole, including the claimant's reported activities of daily living.

*Id*. at 1045.

The plaintiff contends that the administrative law judge wrongly found that there was "a significant drop in the Plaintiff's Working Memory [I]ndex score" when the results of the Wechsler Adult Intelligence Scale (WAIS) given by Debora Elliot Ward, Ph.D., a consulting psychologist, in August 2011, is compared with the results of the same test given by James R. Werrbach, Ph.D., another consulting psychologist, in January 2013. Itemized Statement at 5. In fact, Dr. Ward's Working Memory Index score was 71, and Dr. Werrbach's was 74. Record at 864, 1636.

However, the administrative law judge did not say that Dr. Werrbach's Working Memory Index score was lower than that of Dr. Ward. He said only that Dr. Werrbach's five WAIS scores, which he reported accurately, *id*. at 1040, 1636, "appear[ed] to represent a recent decline in the claimant's intellectual functioning[,]" and that "testing prior to October, 2012, had yielded

5

somewhat higher scores[.]" *Id*. at 1040, 864.  The plaintiff cites no authority in support of her apparent contention that the fact that one of the five scores was actually three points higher when tested by Dr. Werrbach means not only that all of Dr. Werrbach's findings must be adopted by the administrative law judge but also that the outcome of her application for benefits would necessarily change given that one error by the administrative law judge, if it was an error at all.  *See, e.g., Bolduc v. Astrue*, No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

I note first that Dr. Ward's testing was done during the closed period for which the plaintiff seeks benefits here, while Dr. Werrbach tested the plaintiff three months after the close of that period.  Next, the administrative law judge was permitted to contrast the plaintiff's own function report, dated August 2010, *id*. at 247-54, with her statements to Dr. Werrbach in January 2013, after the end of the period for which she seeks benefits in this action, in which she reported greatly reduced ability to engage in activities of daily living.  *Id*. at 1633.  Further, Dr. Tingley, the psychological expert, testified at the hearing, after reviewing all of the relevant records, that the plaintiff did not suffer from a learning disability that was severe at any time during the relevant period.  *Id*. at 1074, 1079.  Dr. Tingley identified evidence in the record that supported this testimony.  *Id*. at 1081-89.

The plaintiff contends that Dr. Tingley wrongly interpreted an office note dated August 31, 2011, of Jennifer Charity, M.D., who was the plaintiff's primary care provider at the time, stating that the plaintiff had no barriers to learning.  *Id*. at 950.  She points to a Mental Impairment Questionnaire signed by Dr. Charity on December 14, 2011, in which she diagnosed the plaintiff with unspecified learning disorders, *id*. at 1012, 1015, and checked the box titled "No useful ability to function" for the abilities to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms," "[p]erform at a consistent pace without an unreasonable

6

number and length of rest periods," "[d]eal with normal work stress," "[u]nderstand and remember detailed instructions," "[c]arry out detailed instructions," and "deal with stress of semiskilled and skilled work." *Id*. at 1014-15.[2] These opinions can only be considered to be at odds with the earlier note, which was also signed by Dr. Charity. Dr. Tingley listed other evidence in the record that was consistent with the earlier note; as an expert, he was not barred from giving credit to the earlier note rather than the later entries on the questionnaire.

Even if Dr. Tingley's use of Dr. Charity's records was incorrect, there was sufficient other evidence in the record to support his opinion. Nor does the plaintiff's interpretation of the records of James A. Iannazi, M.D., as "consistent with the observations of both Dr. Ward and Dr. Werrbach," Itemized Statement at 9, necessarily lead to a conclusion that Dr. Tingley could not rely on Dr. Iannazi's records. Finally, the facts that others diagnosed the plaintiff with a learning disorder and that the plaintiff was referred to Dr. Ward[3] "for psychological testing and intellectual functioning[,]" *id*. at 10, do not make Dr. Tingley's testimony unavailable to support the administrative law judge's conclusions, so long as that opinion is supported by other substantial evidence in the record, as it was.

The plaintiff also contends that all of Dr. Tingley's testimony must be rejected because he "considered the fact that 'she was receiving unemployment' and 'presenting herself as ready, willing, and able to go to work.'" *Id*. at 10. It is true, as the plaintiff asserts in support of this position, that the administrative law judge may consider only medical evidence at step 2 of the evaluation process. *Id*.; *see also Giltner v. Astrue*, No. 06-131-B-W, 2007 WL 2021916, at *3 (D.

---

[2] The plaintiff summarizes these listed limitations as "the inability to meet competitive standards in the ability to remember work-like procedures." Itemized Statement at 8.
[3] As the defendant points out, Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 6-7, Dr. Ward's conclusions do not support any specific conclusions as to the plaintiff's mental limitations, because they are phrased as "likely" or as conditions that "may" exist. Record at 867; *see Estey v. Colvin*, Civil No. 1:13-cv-45-DBH, 2014 WL 1513341, at *5 (D. Me. Apr. 16, 2014).

Me. July 11, 2007).  That authority does not mean, however, as the plaintiff would have it, that a medical expert's testimony is so limited, or that his testimony must be divided into distinct sections, each addressed to a different step of the process followed by the administrative law judge, each with distinct limits on the evidence that the medical expert may consider.  Nor does the fact that the plaintiff's sister, in a report submitted by the plaintiff, is the source of the information about the plaintiff's reliance on unemployment benefits, mean that the medical expert could not conclude that the plaintiff was presenting herself as ready and able to work in order to obtain those benefits, contrary to the plaintiff's suggestion.  Itemized Statement at 10-11.

### B.  RFC Issues

The plaintiff next contends that the administrative law judge did not give sufficient reasons for assigning "little weight" to the opinions of Dr. Charity as expressed on the mental impairment questionnaire.  Itemized Statement at 11-13.  The administrative law judge said the following about Dr. Charity's opinions, after describing them at length: "While Dr. Charity has treated the claimant since February, 2011, her opinions have been given little weight as the degree of limitations cited is not supported in her contemporaneous treatment records or by the longitudinal record, and appear to be based in large part on the claimant's subjective allegations."  Record at 1047.  These three reasons provide a sufficient explanation for the weight given to Dr. Charity's opinions.  *See, e.g., Sayed v. Colvin*, No. 2:13-cv-156-GZS, 2014 WL 2095192, at *5 (D. Me. May 20, 2014) (lack of support in treatment records sufficient statement of "good reason" to give little weight to opinions of treating physician); *Smythe v. Astrue*, No. 2:10-cv-251-GZS, 2011 WL 2580650, at *4 (D. Me. June 28, 2011) (sufficient "good reason" where administrative law judge stated that treating physician's opinion was based on claimant's subjective allegations).

The plaintiff discusses at length the reasons why Dr. Charity's opinions could have been adopted by the administrative law judge, Itemized Statement at 13-14, but that is not the test applicable to this appeal. Rather, the administrative law judge's assignment of weight to those opinions must be supported by substantial evidence. Here, substantial evidence is found in Dr. Tingley's testimony, Dr. Charity's notes that contradict the degree of limitation that she assigned to the plaintiff (*e.g.*, Record at 950 ("Barriers to Learning: none")), and the plaintiff's history of normal mental status examinations (*e.g., id.* at 793, 798-99, 849, 855, 860, 881, 905, 1438, 1448, 1452).

With respect to Dr. Werrbach's opinions, the plaintiff challenges, Itemized Statement at 14-15, the administrative law judge's decision to give them "little to no weight with respect to the period September 16, 2009, through October 3, 2012, as Dr. Werrbach does not appear to have examined or treated the claimant prior to January, 2013, and the degree of limitations cited are not supported by the evidence as a whole prior to October, 2012." Record at 1048. She apparently contends that the administrative law judge was required to consider Dr. Werrbach's opinions because the limitations he imposed are consistent with those imposed by Dr. Charity and were relied upon by the Appeals Council in awarding benefits beginning on October 4, 2012. Itemized Statement at 14-15.

However, the plaintiff cites no indication in Dr. Werrbach's report that he intended his conclusions to apply to any period of time before he conducted his examination, which occurred several months after the date of onset of disability approved by the Appeals Council. Accordingly, the administrative law judge was not required to consider it in this proceeding. *See Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *5 (D. Me. July 7, 2011).

9

The plaintiff's final proffered ground for remand is an assertion that "the A[dministrative] L[aw] J[udge] was under the misimpression that the Appeals Council remand order required him to adopt the opinions of a medical expert." Itemized Statement at 15. Contrary to the plaintiff's interpretation, however, the record does not demonstrate that the administrative law judge "clearly indicated that he was bound to accept the opinions expressed by Dr. Tingley[.]" *Id.*

The relevant portion of the transcript of the hearing follows:

> ATTY: . . . And those [GAF scores] would be more than just the moderate limitations that Dr. Tingley identified. And I think that –
> ALJ: Here's the difficulty[.] The Appeals Council directed me to obtain expert opinion to assist me in the claim. That's what we've got. I cannot – I cannot go in now and reject Dr. Tingley's opinion and make my own conclusions based on the record, now can I?
> ATTY: I think that that's possible, your honor.
> ALJ: Absolutely not. Not in [the] face of the Appeals Council direction that I obtain expert opinion in the case. That's what I'm stuck with.
> ATTY: Okay.
> ALJ: You—I don't think I need any more argument from you. You can argue the value of Dr. Tingley's testimony at other levels. I was required to take Dr. Tingley's testimony. It's the record.

Record at 1106-07.

This exchange cannot reasonably be read as a pronouncement by the administrative law judge that he must accept and adopt Dr. Tingley's opinions, whatever they may be. Rather, he is stating, correctly, that the Appeals Council required him to obtain expert testimony at the hearing, and that he cannot disregard that testimony and draw his own conclusions from the raw medical evidence. This exchange is not evidence that the administrative law judge was abdicating his responsibility to weigh conflicting medical evidence and to choose one conflicting medical opinion over another, for good reasons. On the contrary, and consistent with the administrative law judge's well-established role in weighing conflicting medical opinion, the Appeals Council would not direct an administrative law judge in advance to accept a particular medical opinion, nor would an

administrative law judge believe that the Appeals Council had ordered him or her to do so. In any event, the administrative law judge's opinion here demonstrates that he did not merely adopt Dr. Tingley's opinion, as if he had no choice to do otherwise, but rather weighed it in the context of "the evidence as a whole." Record at 1045.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 25th day of April, 2016.

                                        /s/ John H. Rich III
                                        John H. Rich III
                                        United States Magistrate Judge